**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **BRIAN GARCIA, # M-30182,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-819-MJR** |
| | ) | |
| **DR. VIPIN SHAH,** | ) | |
| **JOHN R. BALDWIN,** | ) | |
| **and JOHN and/or JANE DOE (#1-?),** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arose while he was confined at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff claims that Defendants were deliberately indifferent to his serious medical conditions, and violated his rights under the Americans with Disabilities Act ("ADA"). This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that

refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

Plaintiff has been a quadriplegic since 1995, and depends on a wheelchair for mobility.  His hands, torso, and lower body are paralyzed, and he has partial paralysis of his arms (Doc. 1, p. 5).  He notes that he secured the assistance of another inmate in drafting his complaint.

Since August 2012, Plaintiff had been housed in the Pinckneyville infirmary,

where he had access to health care services and accommodations for his disability, as well as certain devices to assist him in mobility.  However, in late June 2015 following a disciplinary incident, Defendant John/Jane Doe #1 ordered Plaintiff to be discharged from the infirmary and moved to an ADA cell in the disciplinary segregation unit.  Before Plaintiff was moved, he asked Defendant Shah if arrangements had been made to care for his disability-related needs in his new housing area.  Defendant Shah was unable to answer this question.

Plaintiff's new ADA cell (in 5 House, B-Wing, Cell 14) was designed for disabled inmates with more mobility than Plaintiff has.  It was not adequate to meet his needs, and did not have a call button for him to alert staff if he needed assistance.  Plaintiff notified the wing officer and a nurse that his cell lacked the equipment he needed to accommodate his disability, but nothing was done.  For example, Plaintiff no longer had a "transfer board," which was a tool he needed to move from his bed to his wheelchair; did not have his prescribed air mattress, which allowed him to wait longer before needing to have his body repositioned; did not have medical supplies to contain his bodily waste; and was not given his suppositories at the times he normally received them.  As a result, he began having bowel movements while in his bed, and was forced to lie in his own waste until someone eventually came to assist him.  Furthermore, he developed skin deterioration and pressure ulcers from lying in his own waste urine and not being turned enough (Doc. 1, p. 6).

On an unspecified date, Plaintiff fell while trying to move from his bed to his wheelchair, and fractured his toe badly enough that the bone broke out through his skin.  He had to lie on the floor for hours yelling for help until an officer responded and summoned medical assistance.  Plaintiff designates the segregation unit officers who refused to come to his aid on

the day he broke his toe as Defendant John/Jane Does (#2-#?),[1] as he does not know their names or how many individuals were on duty (Doc. 1, p. 8).  He also refers to officers involved in other incidents in the same manner.

Plaintiff repeatedly complained to unnamed (Defendant John/Jane Does #2-#?) officers about the problems he was experiencing in the ADA cell, and asked to be moved back to the infirmary.  As a result, he was allowed to speak with Defendant Shah, and advised the doctor about the pressure ulcers, toe injury, and the ongoing problem of having to lie in his own waste because of not having his transfer board and having to wait for assistance from staff.  Defendant Shah said he would see what he could do, but then did nothing for Plaintiff (Doc. 1, p. 6).

Some time after this, Plaintiff was assigned a cellmate, which prompted him to ask for crisis team intervention to once again request the medical equipment and assistance he needed.  He was moved to a different cell with cellmate Owens, in 5 House, C-Wing, Cell 34.

On August 8, 2015, Plaintiff fell out of his bed (which lacked side rails) while attempting to reposition himself (Doc. 1, p. 7).  The next day, his upper left leg and hip were red and swollen.  Later on, while Owens helped Plaintiff to transfer to his bunk, they heard a grinding noise.  They repeatedly asked for medical help, but none of the John/Jane Doe Officer Defendants (#2-#?) responded.  Plaintiff then developed blood in his urine, headaches, and cold sweats.  On August 11, 2015, Owens wrote a letter to Warden Lashbrook requesting help for Plaintiff (Doc. 1, p. 20).  Defendant Shah examined Plaintiff and saw his pressure ulcers and hip injury.  Defendant Shah said he would try to have an x-ray done in a day or so.  The next day, Warden Lashbrook toured the wing and saw Plaintiff's injuries.  She told Plaintiff she would have him moved back to the infirmary and have an x-ray ordered for his hip.

---

[1] In the Merits Review section below, the Court shall assign numbers and descriptions to the various John/Jane Does in accordance with Plaintiff's potential claims against them.

On August 12, 2015, Plaintiff had an x-ray, which showed a severe injury to his hip including a displaced bone fracture and internal bleeding.  Plaintiff had surgery on August 13, 2015, to repair the hip fracture (Doc. 1, p. 8).  He was moved back to the infirmary on an unspecified date (Doc. 1, p. 9).

Plaintiff asserts that the unknown (John/Jane Doe Defendants) who removed him from the infirmary, took away his transfer board and other accommodations, refused to restore those items to him, and denied him adequate staff assistance to meet his disability-related needs, violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* If he had been properly provided with the accommodations he needed, he most likely would not have suffered the falls that led to his broken toe and fractured hip (Doc. 1, p. 10).  Likewise, if he had remained in the infirmary, he would have had access to staff assistance and would not have been required to repeatedly lie in his own waste for hours, suffered pressure ulcers, or had to wait for help after falling to the floor without access to a call system.

Plaintiff includes Defendant Baldwin (IDOC Director) as a party in order for him to respond to discovery requests aimed at identifying the John/Jane Doe Defendants by name (Doc. 1, p. 9).   Additionally, he requests injunctive relief pursuant to the ADA to prevent Defendant Baldwin or any of his successors from placing Plaintiff in a disciplinary housing unit unless he is provided the same accommodations and access to medical care as he would receive in the infirmary (Doc. 1, pp. 11, 14).

Plaintiff seeks compensatory and punitive damages for the violations of his right to be free from cruel and unusual punishment (Doc. 1, p. 12).  He also includes several specific requests for information to assist him in discovering the identities of the John/Jane Doe Defendants (Doc. 1, pp. 12-14).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Eighth Amendment deliberate indifference claim against Defendant Shah, for failing to take measures to meet Plaintiff's disability-related medical needs while he remained in Cells 14 and 34 (*e.g.*, treatment for pressure ulcers, transfer board, assistance with bowel hygiene) during June-August 2015, and delaying and/or failing to provide medical care for Plaintiff's fractured hip;

**Count 2:** Eighth Amendment deliberate indifference claim against Defendant John/Jane Doe #1, for removing Plaintiff in June 2015 from the infirmary without giving him necessary equipment or access to medical care, which led to Plaintiff's injuries (fractured toe and hip, pressure ulcers) and inability to maintain personal hygiene;

**Count 3:** Eighth Amendment deliberate indifference claims against Defendants John/Jane Doe(s) #2 (wing officer, nurse, and other segregation unit officers in 5 House, B-Wing, Cell 14), for failing to assist Plaintiff in obtaining his transfer board, medical supplies, and medical assistance to meet his daily disability-related medical and hygiene needs;

**Count 4:** Eighth Amendment deliberate indifference claims against Defendants John/Jane Doe(s) #3 (segregation unit officers in 5 House, B-Wing, Cell 14), for failing to obtain timely medical care for Plaintiff's fractured toe;

**Count 5:** Eighth Amendment deliberate indifference claims against Defendants John/Jane Doe(s) #4 (officers on duty in 5 House, C-Wing, Cell 34), who failed to summon medical help for Plaintiff between August 9-11, 2015, after he fell and injured his hip;

**Count 6:** Claims against Defendant Baldwin under the ADA and Eighth Amendment for injunctive relief, to prevent Plaintiff's future placement in a disciplinary housing unit unless he is provided the same accommodations and access to medical care as he would receive in the infirmary.

Each of the above claims shall proceed in this action for further review. However, before Plaintiff may pursue his claims against the Unknown (John/Jane Doe) Defendants in Counts 2, 3, 4, and 5, he must identify them by name.

**Deliberate Indifference to Serious Medical Needs**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain."  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  A condition that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention" also triggers Eighth Amendment concerns.  *Id.*

As to the subjective element of an Eighth Amendment claim, "[d]eliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).  However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable

measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.  *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff's paralysis and need for daily assistance in meeting his basic needs to maintain his health and hygiene qualifies as an objectively serious medical condition.  Further, his falls and injuries resulted in additional conditions that a reasonable layperson would recognize as requiring medical attention.  The complaint thus satisfies the objective component of an Eighth Amendment claim.  The remaining question, as to Counts 1-5, is whether the various Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

**Count 1 – Defendant Shah**

Several of Plaintiff's encounters with Defendant Shah could support a deliberate indifference claim.  As the prison physician, Defendant Shah appears to have been well aware of Plaintiff's physical challenges and the risks to his health if he were deprived of the equipment and assistance he needed in order to reposition his body throughout the day and attend to his personal hygiene needs.  Plaintiff questioned Defendant Shah about those issues upon learning that he would be moved out of the infirmary to a segregation cell.  However, Defendant Shah took no steps to see that Plaintiff would be provided with the items and help he needed to avoid the health problems that ensued.

After Plaintiff had been in the segregation cell long enough to develop pressure ulcers, and fractured his toe, he told Defendant Shah about the ongoing problems that led to his skin deterioration and toe injury.  Defendant Shah was aware of the risk to Plaintiff from being

unable to summon timely help for his medical and hygiene needs, as well as the risk from being deprived of his transfer board and prescribed air mattress, yet he took no steps to mitigate the risks Plaintiff faced.  Finally, after Plaintiff injured his hip, Defendant Shah appears to have delayed taking action to get x-rays of the injured area, in order to determine what medical care was required.

In each situation, Defendant Shah was aware of the risk of injury to Plaintiff given the lack of accommodation for his disability-related medical needs, as well as the actual injuries he sustained.  However, he failed to take steps to mitigate those risks or to treat Plaintiff's injuries.  For these reasons, Plaintiff's deliberate indifference claims against Defendant Shah in **Count 1** shall proceed for further review.

**Count 2 – Placement in Segregation Cell – Defendant John/Jane Doe #1**

Plaintiff claims that Defendant John/Jane Doe #1, who made the decision to place him in the segregation cell, knew that the cell was not equipped for a person with Plaintiff's condition – specifically, that he would not be able to access the toilet or wheelchair without assistance, and that the cell lacked a panic button or other means for Plaintiff to summon help if needed.  If Defendant John/Jane Doe #1 indeed had knowledge of the health and safety risks Plaintiff would face because of the cell conditions, yet placed him there despite those risks, the Defendant could be held liable for violating Plaintiff's constitutional rights.  Plaintiff speculates that Defendant John/Jane Doe #1 could be the Chair of the Adjustment Committee, or a warden (Doc. 1, p. 8).

Based on Plaintiff's allegations, the deliberate indifference claim against Defendant John/Jane Doe #1 in **Count 2** survives threshold review under § 1915A.  However, as noted earlier, Plaintiff must identify the responsible individual by name before he or she can be

served with notice of this action, in order to proceed further with this claim.  To that end, Plaintiff may serve discovery requests on Defendant Baldwin in order to identify Defendant John/Jane Doe #1, as well as the other John/Jane Doe Defendants discussed below.

**Count 3 – Failure to Provide Medical Equipment/Assistance in Segregation Cell – Defendant(s) John/Jane Doe #2**

The complaint is not clear on how long Plaintiff was housed in the initial disciplinary segregation cell (5 House, B-Wing, Cell 14) before he was moved to 5 House, C-Wing, Cell 34.  He does, however, describe that when he was placed in Cell 14, he told the wing officer about the problems he would have in the cell because of the lack of equipment to accommodate his health needs.  He likewise informed the nurse of his needs soon after his relocation.  Neither of those individuals took any steps to help Plaintiff.  As time went on, Plaintiff claims that he complained to other officers on the unit about his need for the transfer board and air mattress, and his problems in summoning help when he had bowel movements before he could get to the toilet.  None of the officers did anything to mitigate these problems.

These allegations state potential deliberate indifference claims against the John/Jane Doe #2 Defendants, who include the wing officer on duty when Plaintiff was first assigned to 5 House, B-Wing, Cell 14; the nurse who he informed of his problems at the beginning of his stay in that cell; and an undetermined number of other individuals who were personally notified by Plaintiff of his health/hygiene needs and the risks he faced by being housed in Cell 14.  Again, Plaintiff must identify those individuals by name before he may proceed with his deliberate indifference claims against them in **Count 3**.

**Count 4 – Failure to Obtain Medical Care for Toe Injury – Defendant(s) John/Jane Doe #3**

Plaintiff fell and injured his toe while he was still in Cell 14 in 5 House, B-Wing. He lay on the floor after his fall for a long time, yelling for help, before an officer responded and

sent for medical assistance.  It is not clear whether this officer or any other staff heard Plaintiff's calls for help earlier but failed to respond, or whether nobody was aware of Plaintiff's cries for help until just before the officer heard and found him.  If any John/Jane Doe #3 Defendant officers heard Plaintiff yelling for help but ignored his calls, Plaintiff would have a colorable deliberate indifference claim against them.  On the other hand, if the officers simply had not heard him and were unaware of his dilemma, they would not have had the requisite knowledge of the risk of harm to him from the toe injury, and the subjective element of a deliberate indifference claim would not be met.  Mere negligence, as noted above, does not violate the Constitution.  *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Further factual development will be necessary to determine whether Plaintiff has a viable deliberate indifference claim against the John/Jane Doe #3 Defendant(s) who were on duty on 5 House, B-Wing, Cell 14 on the day Plaintiff fell and broke his toe.  **Count 4** shall thus remain in the action at this time.  Plaintiff must identify the unknown Defendants by name in order to proceed with this claim.

## Count 5 – Failure to Obtain Medical Care for Hip Injury – Defendant(s) John/Jane Doe #4

Plaintiff's description of the John/Jane Doe #4 Defendants is more precise.  He fell and injured his hip on August 8, 2015, when he was in Cell 34 in 5 House, C-Wing.  On August 9, 2015, and continuing through August 11 or 12, 2015, Plaintiff and his cellmate made repeated requests to the officers on duty to summon medical assistance for him, yet they took no action.  If Plaintiff can identify the Defendant John/Jane Doe #4 Officers who were told about Plaintiff's symptoms but failed to take steps to obtain medical care for him, he may proceed with his deliberate indifference claims against those officers in Count 5.

**Count 6 – Injunctive Relief – Defendant Baldwin**

Plaintiff asserts that the Pinckneyville officials who moved him to the disciplinary segregation cell violated the ADA by denying him participation in the infirmary program, where his special disability-related needs could be accommodated.  As a result, his major life activities were substantially limited and impaired.  The denial of Plaintiff's transfer board, air mattress, a bed with side rails, access to a call button, and regular staff assistance to meet his medical and hygiene needs led to serious injuries, medical complications, and his inability to maintain basic cleanliness.

Title II of the ADA prohibits public entities from denying qualified individuals with disabilities the opportunity to participate in the services, programs, or activities of the public entity because of their disabilities, and prohibits discrimination against disabled individuals by a public entity.  42 U.S.C. § 12132.  The Supreme Court has held that Title II of the ADA applies to prisons.  *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998).  Furthermore, the Supreme Court observed in *U.S. v. Georgia*, 546 U.S. 151 (2006):

> [I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [Plaintiff]'s disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted "exclu[sion] from participation in or ... deni[al of] the benefits of" the prison's "services, programs, or activities."  (citing 42 U.S.C. § 12132).

*Georgia*, 546 U.S. 151, 158.

An inmate may sue state officials in their official capacity for prospective injunctive relief under Title II.  *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (Department of Corrections employees may not be sued in their individual capacities under the ADA or Rehabilitation Act); *Brueggeman ex rel. Brueggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).  This is exactly the relief Plaintiff seeks in this action against Defendant

Baldwin – an order to ensure that he is never again housed under the conditions that led to the serious injuries and medical complications described in Counts 1-5.  Plaintiff invokes both the ADA and the Eighth Amendment as alternative grounds for seeking injunctive relief (Doc. 1, p. 11).

While Plaintiff is no longer housed at Pinckneyville, where the alleged violations occurred, he will continue to be incarcerated for several more years and may be at risk of being placed in a similarly inadequate cell in another institution.  Accordingly, his claim for injunctive relief against Defendant Baldwin (in his official capacity only) shall proceed under **Count 6**.

The complaint states no claim against Defendant Baldwin in his individual capacity, however.  Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted).  Further, the doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions.  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).  Nothing in the complaint suggests that Defendant Baldwin had any personal involvement in the decision to remove Plaintiff from the infirmary, to deny him the accommodations he needed to care for his health and safety, or the failure to provide him with medical care.  Therefore, all individual-capacity claims against Defendant Baldwin shall be dismissed.

## Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) is

**TERMINATED AS MOOT**.  No such motion is necessary for a Plaintiff who has been granted leave to proceed *in forma pauperis* ("IFP").  The Court shall order service on all defendants who remain in the action following threshold review under § 1915A.  28 U.S.C. § 1915(d).

<u>Disposition</u>

Defendant **BALDWIN** shall remain in the action in his official capacity only.  All individual-capacity claims against Defendant **BALDWIN** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **SHAH** and **BALDWIN**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John/Jane Doe #1-4) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used

only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

       **IT IS SO ORDERED.**

       **DATED: November 14, 2016**

                                    **s/ MICHAEL J. REAGAN**
                                      **Chief District Judge**
                                      **United States District Court**