IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN GARCIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-0819-MJR-SCW |
| | ) |
| DR. VIPIN SHAH and | ) |
| JOHN R. BALDWIN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### I. INTRODUCTION

Brian Garcia (Plaintiff), currently an inmate at Lawrence Correctional Center (Lawrence), filed a pro se complaint in the above-captioned case, alleging violations of his federally-secured civil rights while incarcerated at Pinckneyville Correctional Center (Pinckneyville). Now before the Court is a motion for summary judgment filed by Defendant Dr. Vipin Shah (Doc. 24). Defendant John Baldwin moves to join in Shah's motion. Defendant Baldwin's motion to join (Doc. 27) is **GRANTED**, and the Court treats the summary judgment motion and supporting brief as filed by both Defendants.

Defendants seek summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA). Plaintiff failed to respond to the summary judgment motion, and the time to respond has long passed. The motion is ripe for disposition. As explained below, the Court **GRANTS in part and DENIES in part** the motion for summary judgment.

## II. Procedural Background and Summary of Key Facts/Allegations

A preliminary note is warranted about the consequences of Plaintiff's failure to respond to the summary judgment motion. Federal Rule of Civil Procedure 56(e) affords federal district courts a certain amount of discretion when a responding party fails to properly address facts raised in the moving party's motion for summary judgment. Available options, inter alia, include giving the opposing party an opportunity to address the facts as stated by the movant, considering the facts undisputed, or issuing "any other appropriate order." **Fed. R. Civ. P. 56(e).** Although the undersigned typically considers uncontested facts as undisputed, here the Court finds portions of Plaintiff's complaint and attached records, exhibits helpful in understanding the steps taken by Plaintiff to exhaust his administrative remedies. Therefore, while the Court considers most of the facts set forth by Defendants as undisputed, it exercises discretion under Rule 56(e) to rely upon certain aspects of Plaintiff's complaint and supporting documentation to fill in gaps in Defendants' record.

Plaintiff filed this lawsuit on July 20, 2016. (Doc. 1). Plaintiff has been a quadriplegic since 1995 and is dependent on a wheelchair. (Doc. 7, p. 2). His hands, torso, and lower body are paralyzed, and he has partial paralysis of his arms. (*Id.*). Beginning in 2012, Plaintiff was permanently housed in the Pinckneyville infirmary. After a disciplinary incident in June 2015, he was moved to an ADA cell – i.e., a cell compliant with the Americans with Disability Act, 42 U.S.C. 12132, et seq. -- in the disciplinary segregation unit. (*Id.* at 2 – 3).

Plaintiff alleges Eighth Amendment violations against Defendant Shah for failing to take measures to meet Plaintiff's medical needs (e.g., treatment for ulcers, a transfer board, and assistance with bowel hygiene) while he was housed in segregation cells from June to August 2015, and for delaying and/or failing to provide medical care for a hip fracture suffered when Plaintiff fell off his bunk in the ADA cell on August 8, 2015.[1] (*Id.* at 4, 6). Plaintiff also raises Eighth Amendment and ADA claims against Defendant Baldwin (Director of the Illinois Department of Corrections), seeking injunctive relief to prevent Plaintiff's future placement in a disciplinary housing unit unless he is provided the same accommodations and medical care access he would get in the prison infirmary. (*Id.*).

Plaintiff prepared a grievance regarding his issues with the segregation cell on August 2, 2015. (Doc. 25-2, p. 7). In the grievance, Plaintiff detailed that he is a quadriplegic, and that after living in the prison's infirmary since August 2012, he was moved to a segregation cell in general population on June 28, 2015. (*Id.*). Plaintiff also wrote that the cells he was housed in were not fit for a person with his level of dependency and that he was suffering from multiple pressure ulcers due to the neglect of medical staff. (*Id.*). He indicated that he had no assistance for bowel movements, and that he soiled himself daily. (*Id.*). For the relief requested, Plaintiff sought immediate transfer to the infirmary, a discontinuation of his disciplinary confinement in

---

[1] Plaintiff alleged four other counts/claims in his complaint, which were directed against John/Jane Doe defendants. (*See* Doc. 7, p. 6). Plaintiff failed to identify the Doe defendants, and the four counts against the Doe defendants were dismissed by the Court. (Doc. 29).

segregation, and a transfer to Dixon Correctional Center, where he could receive more adequate care. (*Id.*).

The August 2, 2015 grievance was sent as an emergency grievance and was deemed to be an emergency by the warden on August 10, 2015. (*Id.*). A note in the space for the counselor's response dated August 15, 2015, says that the issue was addressed and the inmate was moved to the healthcare unit on August 11th. (*Id.*). In his complaint, Plaintiff alleges that after receiving the counselor's response, on August 15th, he sent the grievance to the grievance officer. (Doc. 1, p. 4).

The grievance was denied by the grievance officer the same day, indicating that the issue had already been addressed and that there was no justification for further consideration. (Doc. 25-2, p. 9). The denial was sent in a memo from the grievance officer to Plaintiff. (*Id.*). Plaintiff alleges that the grievance was not sent to the warden. (Doc. 1, p. 4). Though it is not clear exactly when, the grievance was sent to the Administrative Review Board (ARB) and was received by the ARB on November 4, 2015. (Doc. 25-2, p. 7). The ARB returned the grievance on November 16, 2015, indicating it was untimely. (*Id.* at 6).

Plaintiff prepared another grievance on March 21, 2016. (*Id.* at 4). He again grieved being placed in the segregation cell in the summer of 2015. (*Id.*). He also referenced his broken hip, stating that he went "multiple days without medical treatment [for] a severe broken hip." (*Id.*). By the time Plaintiff prepared this grievance, he had been transferred from Pinckneyville to Lawrence. (*Id.*). The

counselor indicated that the grievance was outside the jurisdiction of the facility and should be sent to the ARB. (*Id.*). The ARB received the grievance on May 18, 2016 and responded on June 22, 2016. (*Id.* at 3). The ARB indicated that the grievance was untimely and that it was misdirected. (*Id.*). The ARB instructed Plaintiff to contact the healthcare unit regarding his hip pain. (*Id.*). The records contain only two other grievances by Plaintiff. (*Id.* at 2). Both of these grievances were prepared prior to Plaintiff's transfer to segregation in June 2015 and are not relevant here. (*Id.* at 2, 11).

### III. APPLICABLE LEGAL STANDARDS

#### A. Summary Judgment Motions

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. ***Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).** The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986),** *quoting* **FED R. CIV. P. 56(e)(2).**

A fact is material if it is outcome determinative under applicable law. ***Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th**

Cir. 2005). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, **711 F.3d 794, 798 (7th Cir. 2013).** On summary judgment, the district court construes the facts and draws the reasonable inferences in favor of the non-moving party. *Cole v. Board of Trustees of Northern Illinois University,* **838 F.3d 888, 895 (7th Cir. 2016).**

Generally, a district court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but only to determine whether a general issue of triable fact exists. However, a different standard governs summary judgment motions on the issue of exhaustion. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**.

A motion for summary judgment based upon failure to exhaust administrative remedies typically requires a hearing to determine any contested issues about exhaustion, and the judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** But "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury and can be determined by the judge. *Pavey*, **544 F.3d at 740-41.** In the case at bar, the exhaustion issue presents a purely legal question, so no hearing is required.

B.  **Exhaustion under the Prison Litigation Reform Act**

Lawsuits brought by prisoners are governed by the PLRA, 42 U.S.C 1997e, which requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**  Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust *before* he commences his federal litigation.  He cannot exhaust while his lawsuit is pending.  *See Perez v. Wisconsin Department of Corr.*, **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page*, **291 F.3d 485, 488 (7th Cir. 2002).**  If the inmate fails to exhaust before filing suit in federal court, the district court must *dismiss* the suit.  *See Jones v. Bock*, **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**[2]

The law of this Circuit mandates strict adherence to the PLRA's exhaustion requirement.  "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred."  *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).**  This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require."  **Id. at 1025.**  *See also Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) ("This circuit has taken a strict compliance approach to exhaustion").**

---

[2]  Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust before filing suit, exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," like grievances and related documentation.  *See* **FED. R. CIV. P. 12(d).**

If an inmate fails to comply with the established procedures, including time restraints, the court may not consider the inmate's claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011);** *Jones*, **549 U.S. at 211 (citing** *Porter v. Nussell*, **534 U.S. 516, 524 (2002)0.** But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. 1997e(a).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, **534 U.S. at 524.** *See also Booth v. Churner*, **532 U.S. 731, 737 (2001) (exhaustion requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process and may not file in anticipation of administrative remedies soon being exhausted. *Perez*, **182 F.3d at 535,** *citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending. *Perez*, **182 F.3d at 535.**

The affirmative defense of failure to exhaust depends on whether a plaintiff has fulfilled the PLRA's exhaustion requirement, which in turn depends on the prison grievance procedures set forth by the state. *See Jones*, **549 U.S. at 218.** As a prisoner

in Illinois institutions, Plaintiff was required to follow the grievance procedures of the Illinois Department of Corrections (IDOC). *See Jones v. Bock*, **549 U.S. 199, 218 (2007).**

C. **Exhaustion under Illinois Law**

In Illinois, the process for exhausting administrative remedies is laid out in the IDOC's Grievance Procedures for Offenders. **20 Ill. Adm. Code 504.810.** The procedures first require inmates to speak with their counselor about the issue or concern. **20 Ill. Admin. Code 504.810(a).** If unable to resolve a dispute with the counselor, the prisoner may file a written grievance with the Grievance Officer within sixty days of discovery of the dispute. *Id.* The grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint…[or] as much descriptive information about the individual as possible." **20 Ill. Admin. Code 504.810(b).**

The grievance officer shall review the grievance and report findings and recommendations to the Chief Administrative Officer (CAO). **20 Ill. Adm. Code 504.830(d)**. The prisoner then has the opportunity to review the CAO's response. *Id.* If the prisoner is unsatisfied with the institution's resolution of the grievance, he may file an appeal to the Director through the Administrative Review Board within 30 days of the CAO's decision. **20 Ill. Adm. Code 504.850**. Completion of this process exhausts a prisoner's administrative remedies.

The Illinois Administrative Code also provides that a prisoner may request his grievance handled on an emergency basis by forwarding the grievance directly to the CAO. **20 Ill. Adm. Code 504.840**. The grievance may be handled on an emergency basis if the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm to the offender. *Id.* The request to have a grievance handled on an emergency basis may also be appealed to the ARB. **20 Ill. Adm. Code 504.850**. When a grievance is related to "disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned," the prison may submit that grievance directly to the ARB. **20 Ill. Adm. Code 504.870(a).** The ARB must "review and process the grievance in accordance with Section 504.850," as discussed above. **20 Ill. Adm. Code 504.870(b).**

IV. ANALYSIS

Plaintiff has exhausted all of his claims *except* for those specifically relating to the treatment of his broken leg. The Court first considers the August 2nd grievance. Once Plaintiff received this emergency grievance back from the counselor, he undertook to appeal it through the normal grievance process. At that point, exhaustion was governed by the normal grievance procedure.

Once the grievance was sent to the grievance office, the grievance officer did not follow the required procedure, however. The grievance procedure in place at the time provided that after the grievance officer considered the grievance, he or she shall "report his or her findings and recommendations in writing to the [Chief Administrative Officer

or "CAO"]" who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible…." **20 Ill. Adm. Code 504.830(d)**.

Here, there is no indication anywhere in the record that when the grievance was sent through the normal course, the warden issued a response, or even that the grievance officer sent the grievance *to* the warden. In fact, Defendants acknowledge that the grievance officer returned the grievance to Plaintiff the same day he or she rendered a decision. (Doc. 25, p. 5). Where an inmate never receives a response to a grievance in the normal course of the grievance procedure, the grievance process can be rendered unavailable, and the inmate is deemed to have exhausted as a matter of law. *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities and never receives a response);** *Dole*, **438 F.3d at 809 (a remedy can be unavailable if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources)**. Here, since the warden never responded to Plaintiff's grievance when it was sent through the normal course, Plaintiff's administrative remedies became unavailable at that point, and he is deemed to have exhausted the August 2nd grievance.[3]

---

[3] Defendants' reliance on the ARB's untimeliness finding also fails due to the fact that the time to appeal to the ARB in the normal course begins when the inmate receives the grievance back from the CAO. *See* **Ill. Adm. Code 504.850(a)**. Plaintiff's August 2nd grievance cannot have been untimely appealed to the ARB since the clock to appeal never started, as the CAO never issued a response when the Plaintiff attempted to grieve through the regular process.

The next question is *which* of Plaintiff's claims were exhausted in the August 2nd grievance. The grievance clearly covers Plaintiff's deliberate indifference claims for failing to meet his medical needs relating to his quadriplegic condition while in segregation in June through August 2015, as well as Plaintiff's ADA claims against Defendant Baldwin regarding future placement in disciplinary housing without the same accommodations and access to medical care that he would receive in the infirmary.

Moreover, the fact that Plaintiff does not mention specific defendants in this grievance does not preclude him from exhausting as to Defendants Shah and Baldwin. "Grievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit." *Glick v. Walker*, **385 Fed. App'x 579, 582 (7th Cir. 2010) (unreported, citing *Jones*, 549 U.S. at 218)**. The August 2nd grievance clearly put prison administration on notice that Plaintiff was not receiving adequate medical care in his segregation cell and that he sought a transfer back to the infirmary. *See also Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("**We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.**").

What the August 2nd grievance does *not* exhaust is Plaintiff's claim against Dr. Shah for failing to adequately treat Plaintiff's broken hip. Although the broken hip itself is certainly a part of Plaintiff's potential damages for being left in the segregation cell with inadequate medical care, Shah's deliberate indifference in failing to adequately

treat the hip, is a discrete issue. The hip issue is obviously not raised in the grievance, as Plaintiff prepared the grievance before he broke his hip.

The only other grievance discussing the claims in this suit is the March 21, 2016 grievance, and while Plaintiff references therein that he went multiple days without treatment for his broken hip, that grievance was not properly exhausted. Grievance procedure requires that a grievance be filed within 60 days after discovery of the issue. **20 Ill. Adm. Code 504.810(b)**. Plaintiff's broken hip occurred in August 2015. He did not prepare a grievance referencing inadequate treatment of the hip until roughly seven months later. The March 2016 grievance was untimely, and Plaintiff has failed to exhaust his claim against Dr. Shah for deliberate indifference regarding his broken hip. To clarify, Plaintiff may still be able to seek damages for the broken hip, but he cannot proceed herein on a claim against Shah for deliberate indifference to the hip injury.

V.  CONCLUSION

For the reasons discussed, Plaintiff has exhausted all of his remaining claims except for his claim for deliberate indifference to his broken leg. Defendants' motion for summary judgment (Doc. 24) is **GRANTED in part** (only as to the deliberate indifference claim against Defendant Shah related to the hip) **and DENIED in part**. Plaintiff's claim against Dr. Shah for deliberate indifference in the treatment of Plaintiff's broken hip is **DISMISSED without prejudice**, as not exhausted. All other claims not previously dismissed shall go forward.

IT IS SO ORDERED.

DATED February 25, 2018.

**s/ Michael J. Reagan**
MICHAEL J. REAGAN
United States District Judge